UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

MC2 CAPITAL PARTNERS, LLC,  No. 11-14366

               Debtor(s).
_____/

Memorandum on Motion for Summary Judgment
_____

     MC2 Capital Partners, LLC ("MC2") filed Chapter 11 on December 1, 2011. MC2 is a single purpose entity formed to build and develop an 82-unit multi-family residential project in San Rafael. Construction commenced in the fall of 2008. The project was substantially completed by mid-2011 at a cost of over $55M, including approximately $5M invested by the debtor's principals, including Thomas Monahan – the debtor's president, managing member and responsible individual in bankruptcy. Thomas Monahan is a principal or controls several other business entities, including Monahan Pacific Construction Corporation, Monahan Pacific Corporation and Shaw Capital Partners, LLC ("Shaw").

     Many of MC2's vendors hold claims against the estate for contract work performed between 2008 and 2011. Included in those vendors are Paramount Scaffold, Verrips Construction, RV Stitch Construction and Stitch Construction, all of which filed actions against Monahan or one of his entities to collect on debts owed by MC2. Monahan settled these actions by agreeing to pay the creditors lesser amounts than the full amount of their claims. As part of the settlement, the claims of the

creditors were transferred to Shaw, which was not itself a defendant in the actions.

On February 23, 2012, RV Stitch assigned its claim to Shaw in exchange for $20,000 and Stitch assigned its claim to Shaw for $15,000. On April 5, 2012, Shaw, as assignee, filed two proofs of claim: #32 on behalf of RV Stitch Construction for $94,740.89 and #33 on behalf of Stitch Construction for $21,711.20. On May 25, 2012, Paramount assigned its $60,716.44 claim to Shaw for an undisclosed amount, and Verrips assigned its $7,195 claim to Shaw for an undisclosed amount. On June 25, 2012, Shaw filed two notices of the transfer of Paramount's $60,716.14 claim and of Verrip's $7,040 claim to Shaw. Shaw's claims total $184,363.53, for which it paid $35,000 plus the undisclosed amounts for the Paramount and Verrips claims.

The Official Unsecured Creditors' Committee objected to each of Shaw's claims based on various grounds, including Paramount's and Verrip's failure to file a proof of claim, the general failure to set forth adequate evidence of a claim, and general setoff rights held by MC2 for inadequate or incomplete work by the vendors. The Committee has moved for summary judgment on the four objections; Shaw opposes.

The Committee argues that the claims should be disallowed because the assignment by which Shaw acquired the claims of the original vendors explicitly released any claims or rights originally held against MC2. The court rejects this argument as making no sense. Since Monahan or one of his entities was paying a claim against MC2, the terms of the settlement only make sense if the claims themselves, transferred to Shaw as part of the settlement, are not subject to the general releases. The other creditors of MC2 would receive a windfall if the court were to rule otherwise. To the extent that the releases are inadvertently overbroad - which the court does not buy - the remedy is to reform them, not create a forfeiture and windfall.

The court agrees with the Committee in one respect only: Shaw's claims are limited to the amount actually paid. When an entity is insolvent, a person owing fiduciary duties to the entity "is precluded from recovering more than he paid for the claim unless by order of the court or otherwise he has been shorn of all power . . . " *In re Gallic-Vulcan Mining Corp.*, 135 F.2d 725, 728 (10th Cir.

2

1943); *In re Burnett,* 306 B.R. 313, 319 (9th Cir. BAP 2004) aff'd, 435 F.3d 971 (9th Cir. 2006). The court disagrees with Shaw to the extent it argues that the use of separate legal entities insulates Monahan from his special fiduciary obligations to MC2; the exception to the general rule that transfers are to be taken at face value applies when the transferee has fiduciary duties to the debtor or the transfer is an attempt to circumvent the consequences of those duties. *Id.* See also 9 Bankr.Dev,J., "Claims Trafficking in Chapter 11- Has the Pendulum Swung Too Far?"(1992)["if claims trading may be done in the name of an affiliate or through a fictitious name without adequate disclosure, there may be no opportunity for anyone to determine whether in fact officers, directors, or other fiduciaries are trading in claims."].

The motion for summary judgment will accordingly be granted in part, and it shall be deemed without controversy in further proceedings that the claims assigned to Shaw may be allowed at most in the amount paid to the transferor. In all other respects, the motion will be denied.

Counsel for the Committee shall submit a form of order which counsel for Shaw has approved as to form.

Dated: February 14, 2013

Alan Jaroslovsky
U.S. Bankruptcy Judge

3